[Crim. No. 382.  Second Appellate District.—May 6, 1915.]

## THE PEOPLE, Respondent, v. CLAUDIO LIERA, Appellant.

CRIMINAL LAW—MURDER—FIRING OF PISTOL SHOTS INTO BODY AFTER BLOW BY THIRD PARTY—CONVICTION—SUFFICIENCY OF EVIDENCE.— Where in a prosecution for the crime of murder charged to have been caused by the firing of pistol shots into the body of the deceased by the defendant immediately after the deceased had been struck a fatal blow by a third party, the evidence is not conclusive as to which of the injuries was the immediate cause of death, proof of the firing of the shots is sufficient to justify a conviction.

ID.—CONVICTION OF DEFENDANT AS ACCOMPLICE—PROPER INSTRUCTIONS TO JURY.—Instructions to the jury in such a prosecution which assumed that the evidence might tend to show and that the jury might find that, although the immediate cause of death was the blow administered to deceased, yet the defendant might be convicted as an accomplice, if the jury should find that his actions were those of an accomplice, are not erroneous, notwithstanding the information was in the ordinary form and made no reference to the means by which death was produced.

ID.—DEATH FROM BLOW—DUTY TO ACQUIT—IMPROPER INSTRUCTIONS.— It is not error in such a prosecution to refuse to instruct the jury that if they believed from the evidence that the deceased died as a result of the blow it was their duty to acquit the defendant; or, that if they believed from the evidence that deceased was dying as a result of the fracture of his skull from the blow when the shots fired by the defendant struck him and that his death was not hastened as a result of the pistol shot wounds, it was their duty to acquit the defendant, as both instructions ignore and exclude from consideration any evidence tending to show and from which the jury may have believed that under the circumstances shown the defendant was accessory to the acts of the party administering the blow.

ID.—REASONABLE DOUBT AS TO CAUSE OF DEATH—DUTY TO ACQUIT— IMPROPER INSTRUCTION.—An instruction that if there was in the minds of the jury any reasonable doubt as to what caused the death of the deceased, it was their duty to give the defendant the benefit of such doubt and to acquit him, is improper, as the only doubt under the evidence was as to the relative results of the blow and of the shots, which doubt might exist without entitling the defendant to a verdict of acquittal.

APPEAL from a judgment of the Superior Court of the County of Los Angeles.  Frank R. Willis, Judge.

The facts are stated in the opinion of the court.

Walton J. Wood, Public Defender, and David R. Faries, Deputy Public Defender, for Appellant.

U. S. Webb, Attorney-General, and Robert M. Clarke, Deputy Attorney-General, for Respondent.

CONREY, P. J.—The appellant Liera having been convicted of the crime of murder in the second degree, was sentenced to state prison for a term of years. His appeal is from the judgment.

At about 11 o'clock on the night of June 7, 1914, the deceased, Teofilo Gonzales, was asleep in the house of Alberto Hernandez in the county of Los Angeles. Several members of the Hernandez family were in the house and all had retired for the night. At this time the defendant, together with Juan Lopez and Tomas Estrada, came to the house and knocked at the door. These men were followed in a few minutes by Mrs. Hermana, who lived with Lopez. Shortly afterward, some controversy having arisen, these visitors and some of the Hernandez household were talking together near the house. Thereupon Teofilo Gonzales, roused from sleep by the disturbance, came out and as he came out he asked, ''What is the difficulty''? Juan Lopez replied: ''Whatever you want,'' and at the same time struck Gonzales on the left side of the head in the temporal region with a beer bottle. Gonzales fell backward to the ground, and immediately thereafter the defendant Liera fired five times with a pistol, putting five bullets into the body of Gonzales.

Appellant's first contention is that the evidence shows that Gonzales was killed instantly by the blow received from Lopez and was dead when the shots were fired by defendant. This contention is not conclusively established by the evidence and the exact moment of the death of Gonzales is not shown. The testimony of the coroner's physician who examined the body was that the immediate cause of death, in his opinion, was probably a fracture of the skull, and that either one of the injuries would have caused death. All of the physicians agreed that the blow might have caused instantaneous death, but none of them insisted that it necessarily produced that effect. All agreed that the gunshot wounds were sufficient to have

caused death. Under these circumstances the jury might have found that Gonzales was alive when the shots were fired by defendant and that the effect of those shots was to hasten the death. If this were so, the appellant's own acts in firing the shots would be held to have been sufficient to justify his conviction.

The court by its instructions assumed that the evidence might tend to show and that the jury might find that, although the immediate cause of death was the blow administered to deceased by Juan Lopez, yet that the defendant might be convicted as an accomplice of Lopez in that assault, if the jury should find that his actions were those of an accomplice. It does not appear that the defendant had any quarrel with the deceased either before or at the time of the above mentioned transactions, or that any ill-will existed between them. If there is any ground for the finding that the defendant was accessory to the act of Lopez in making the attack upon the deceased, such ground exists solely in the circumstance that the defendant was present when the blow was struck by Lopez and that he instantly thereafter followed that blow by firing those shots which made the death an assured fact if it was not already inevitable. The court instructed the jury "that in order to render a person an accomplice, he or she must in some manner knowingly and with criminal intent aid, abet, assist or participate in the criminal act." Also, "that an accomplice is one who, knowing that a crime is being committed, willfully and with criminal intent, intentionally aids, abets and assists another in the commission of such crime or criminal act, and whether or not one is an accomplice as defined in these instructions, is for the jury to determine from all the testimony and circumstances in proof in the case." Also, that "for one person to abet another in the commission of a criminal offense simply means, to knowingly and with criminal intent, aid, promote, encourage or instigate, by act or counsel, or by both act and counsel, the commission of such criminal offense." The court further instructed the jury: "You are instructed that the distinction between an accessory before the fact and a principal in case of a felony is abrogated in this state, and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense or aid and abet in its commission, though not present, shall be prosecuted, tried, and punished as principals. You

are further instructed that if you believe from the whole evidence beyond a resonable doubt that this defendant, together with Juan Lopez, at the time and place alleged in the information, made an assault on the person of the deceased, and in the furtherance of a common purpose to assault said deceased, inflicted injuries which caused his death, then you are instructed that it is immaterial, if you find that there was more than one injury inflicted of a character to produce death, which of said injuries it was in fact that produced the death of the deceased. It is sufficient that any one or more of said injuries was of a character to, and did in fact, produce the death of the deceased.''

The information was in the ordinary form, charging appellant with the crime of murder, and it made no reference to the act of Juan Lopez or the means by which death was produced. Appellant's counsel contend that these instructions assume a complicity by defendant which could not exist under the information and which was utterly unproven by the evidence. In order to sustain these objections it would be necessary for us to hold that where two men have made an unprovoked attack upon a third person and each one has administered a blow capable of causing the death, but the death actually occurred from the first blow, that the one who administered the second blow could not be convicted of the murder without direct testimony showing that he had advised, aided, or abetted in the striking of the first blow. To adopt this theory would take away from the jury the right to find as a fact from the circumstances that the attack was a joint enterprise from beginning to end. We are not able to agree with this contention. We do agree that the court is not entitled to give instructions assuming the finding of facts of which there is no evidence; but we think that the case presented here is not an illustration of that rule.

It is further claimed that these instructions relating to the accomplice theory are objectionable for the reason that the prosecution tried its case upon the theory that defendant acted solely as a principal and upon the theory that his act was the sole and efficient cause of the death; and that the judge by these instructions injected into the case a theory foreign to that upon which the evidence had been presented. We think that this objection is not sustained by the record. The evidence produced on behalf of the prosecution included a full ac-

count of the transaction, including the acts of Juan Lopez. The mere fact that the information charged the defendant solely as a principal is not sufficient to prevent his conviction as such principal, even though he acted as an accomplice, or as accessory to another in the commission of the unlawful acts. (Pen. Code, secs. 31, 971.)

Complaint is made that the court refused to give certain instructions requested by the defendant. The propositions involved in these instructions were: 1. That if the jury believed from the evidence that Gonzales died as a result of a blow on the head inflicted by Juan Lopez with a beer bottle, it was their duty to acquit the defendant; and, 2. That if they believed from the evidence that Gonzales was dying as a result of the fracture of his skull inflicted by a blow on his head by Juan Lopez when the shots fired by the defendant struck him and that the death of the deceased was not hastened as a result of the pistol shot wounds, it was their duty to acquit the defendant. The court was justified in refusing these instructions for the reason that they ignored and excluded from consideration any evidence tending to show and from which the jury may have believed that under the circumstances shown the defendant was accessory to the acts of Lopez in the attack made upon the deceased.

Counsel for appellant complain that the court did not give three other instructions, and specify that one of these instructions "was not given elsewhere insofar as applicable." This last mentioned instruction was that "if there is in your minds any reasonable doubt as to what caused the death of the deceased, it is your duty to give the defendant the benefit of such doubt and to acquit him." The only doubt that could have been produced by the evidence with respect to the cause of the death of Gonzales would be a doubt as to the relative results of the blow administered by Lopez and of the shots fired by the defendant. Manifestly, such doubt might have existed without entitling the defendant to a verdict of acquittal.

The judgment is affirmed.

James, J., and Shaw, J., concurred.